# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LEONARD T. McCOY**
       Petitioner,

v.                                   Case No. 10-C-1121
                                      (Criminal Case No. 06-CR-223)

**UNITED STATES OF AMERICA**
       Respondent.

## DECISION AND ORDER

Before me is petitioner Leonard McCoy's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. On review of the parties' submissions and the entire record, I deny the motion and dismiss this action.

### I. FACTS AND BACKGROUND

On February 28, 2008, petitioner pleaded guilty to conspiracy to possess with intent to distribute 1 kilogram or more of heroin and 50 grams or more of cocaine base, resulting in death and serious bodily injury. He faced a guideline range of 210-262 months (offense level 35 and criminal history category III), with a statutory minimum of 240 months, but on July 9, 2008, Judge Clevert sentenced him to 115 months in prison based on the government's substantial assistance motion. In the Judgment, Judge Clevert recommended placement at a camp as close to Chicago as possible. Petitioner took no appeal.

On February 22, 2009, petitioner sent Judge Clevert a letter indicating that he had been placed at a low security institution in Kentucky. Judge Clevert responded on May 7, 2009, advising petitioner that while the district court could make a recommendation, the placement

of prisoners falls within the authority of the Bureau of Prisons ("BOP"). On June 2, 2009, petitioner contacted the United States Probation Office in this district, and the Officer who prepared petitioner's pre-sentence report ("PSR") responded by letter dated July 9, 2009, that facility designation and prison programming decisions were made the BOP. On June 15, 2009, petitioner wrote the Assistant United States Attorney ("AUSA") who prosecuted the case, seeking assistance in removing the "causing death" designation, which was affecting his security status. On December 21, 2009, petitioner sought an administrative remedy through the BOP, but on December 24, 2009, the warden denied his request.

On January 5, 2010, petitioner wrote his trial counsel, asking him to contact the AUSA about his placement at a camp. Counsel made contact with the AUSA, who then sent a letter to the warden dated March 24, 2010, indicating that while petitioner was held responsible for a death under a strict liability provision of the sentencing guidelines, he had no direct connection to the death. The AUSA requested that petitioner's security status related to the death be removed, but the BOP declined to make the change.

On May 24, 2010, petitioner sent Judge Clevert another letter, asking that the "resulting in death" appellation be removed from his PSR. Judge Clevert responded by letter dated September 15, 2010, stating that the case was closed and the court was without authority to assist him. On November 14, 2010, petitioner sent Judge Clevert another letter, indicating that he pleaded guilty because he was told the "causing death" would not preclude his placement at a camp, that his lawyer told him he would go to a camp, and asking if he needed to file a § 2255 motion.[1]

---

[1] The correspondence discussed in the text above is either attached to petitioner's § 2255 motion or contained on the docket in the underlying criminal case.

On December 10, 2010, petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Judge Clevert recused himself, and the case was reassigned to me. In the motion, as grounds for relief, petitioner stated:

> False plea agreement between defendant, attorney and Assistant United States Attorney.
>
> Defendant was not a part doing time of deaths, and Judge took sentenced of 120 or 125 months back and put the defendant at 115 months requested by attorney and Assistant U.S. Attorney so defendant could be place at a camp as close to Chicago, Ill. as possible.

(Motion [R. 1] at 5.) He also stated that his lawyer told him that he would "be sent to a camp and the death would not stop [him] from going." (Id.) As relief, he asked that the deaths be dropped so that he could be placed at a camp and get the 500 hour drug treatment program. (Id. at 14.)

I screened the motion pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings, noting that while the precise nature of petitioner's claim was unclear he seemed to be arguing that his lawyer provided ineffective assistance of counsel and/or that his plea was involuntary based on representations that he would serve his sentence at a prison camp. Although a lawyer's inaccurate prediction about his client's sentence will not ordinarily constitute ineffective assistance of counsel, see, e.g., United States v. Fuller, 312 F.3d 287, 291 (7th Cir. 2002); United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999); United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996), out of an abundance of caution, and because I was not the original judge in this case, I directed the government to respond.

The government attempted to obtain input from petitioner's lawyer, but petitioner was unwilling to waive attorney-client privilege. The government filed a motion to waive the privilege, and petitioner responded that he did not understand why counsel asked him to waive

3

the privilege so he was not willing to do so. I entered an order directing petitioner to clarify his claim. I indicated that if he was alleging ineffective assistance, as I surmised, the privilege would be waived with respect to those communications relevant to his claim. See, e.g., United States v. Pinson, 584 F.3d 972, 977-78 (10th Cir. 2009). If not, the privilege would remain, but petitioner would have to then explain the alternate basis for his claim. See Rogers v. United States, 180 F.3d 349, 357 (1st Cir. 1999) (noting that § 2255 may not be used to challenge the BOP's designation of facility for an otherwise lawful sentence). Petitioner responded that he was, in fact, challenging his lawyer's assistance (rather than the BOP's designation of facility), and that he was willing to waive the privilege now that he had a better understanding. I therefore granted the government's motion to waive attorney-client privilege and directed the government to file a response.

The government has filed its response, accompanied by an affidavit from petitioner's counsel, and petitioner has filed a reply. The matter is ready for decision.

## II. APPLICABLE LEGAL STANDARDS

Section 2255 permits a federal prisoner to attack his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Consequently, such relief is appropriate only for errors of law that are jurisdictional, constitutional, or constitute a fundamental defect inherently resulting in a complete miscarriage of justice. Harris v. United

4

States, 366 F.3d 593, 594 (7th Cir. 2004).

Ordinarily, claims that were or could have been raised on direct appeal may not be brought under § 2255. See, e.g., Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005). However, ineffective assistance of counsel claims may be raised for the first time under § 2255. See Massaro v. United States, 538 U.S. 500, 504 (2003).

In order to establish a claim of ineffective assistance of counsel, the defendant must show both that his attorney's performance was objectively deficient, and that he was prejudiced by the sub-par representation. Strickland v. Washington, 466 U.S. 668, 687 (1984). The court's review of a lawyer's performance is highly deferential, and the defendant must come forward with specific acts or omissions of his counsel that fall outside the wide range of professionally competent assistance. Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010). In order to establish prejudice, the defendant must show that there is a reasonable probability that, but for his counsel's mistakes, the result of the proceedings would have been different. Id. at 694. In a case where the defendant challenges counsel's advice regarding a guilty plea, the prejudice prong requires the defendant to show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### III. DISCUSSION

Petitioner alleges that his lawyer provided ineffective assistance in advising him that he would serve his sentence at a camp, a designation the "causing death" appellation would not preclude.[2] In his affidavit, petitioner's counsel states that he told petitioner that he could not

---

[2] Petitioner does not challenge the propriety of the "causing death" sentencing enhancement.

5

guarantee placement in a camp, and that the court's suggested designation was only a recommendation; the BOP would decide where petitioner served his sentence. (R. 14-2 at 2 ¶ 12.) In his reply, petitioner does not dispute this portion of counsel's affidavit. (See R. 15 at 2 ¶ 12, setting forth no response.) The record thus shows that counsel made no improper promises as to the petitioner's prison designation.

In any event, even if counsel <u>had</u> told petitioner that he would go to a camp, the claim would fail. "An attorney's inaccurate prediction of his client's sentence does not constitute ineffective assistance of counsel." <u>Fuller</u>, 312 F.3d at 293. Only "gross mischaracterizations" will suffice, <u>Martinez</u>, 169 F.3d at 1053, and petitioner's claim falls far short of that high standard.

In <u>Martinez</u>, for instance, the defendant pleaded guilty to drug trafficking and using/carrying a firearm during a drug trafficking offense, 18 U.S.C. § 924(c), and the court sentenced him to 97 months on the drug charge and 60 months consecutive on the gun count, a total of 157 months, the low end of the range he could have received. <u>Id.</u> at 1051-52. The defendant later moved to withdraw his plea, arguing that his attorney promised him a 5 year sentence and that he would get boot camp if he pled guilty. The lawyer disputed this version of events to some extent, stating that he had told the defendant that if he could get him into boot camp he would, not that he made specific promises. However, the lawyer conceded that he never informed his client that he was not eligible for boot camp and that the gun charge alone carried a 5 year minimum sentence to be served consecutively to other penalties. <u>Id.</u> at 1053. Even under these facts, the court found no deficient performance:

> A defense attorney cannot promise his client a particular sentence; all he can do is make a prediction. Here, we must decide whether attorney Martinez's error effectively deprived his client of his Sixth Amendment rights under <u>Hill</u>. 474 U.S.

6

> at 59. In this circuit, an attorney's "mere inaccurate prediction of a sentence" does not demonstrate the deficiency component of an ineffective assistance of counsel claim. Barnes, 83 F.3d at 940; see also United States v. Arvanitis, 902 F.2d 489 (7th Cir. 1990).
>
> Thus, the question is whether these were "mere inaccurate predictions" or whether they were something more invidious. In Barnes, the defendant's lawyer failed to inform him that if he pled guilty, he would be classified as a career offender, and thus subject to much greater punishment than the lawyer predicted. We held that even a "mistake that great" was insufficient to establish a constitutional violation. Id. See also United States v. Thornton, 23 F.3d 1532, 1533 (9th Cir. 1994) (per curiam). United States v. Teller also undercuts the defendant's argument. There, defendant's counsel failed to recognize issues of federal and state jurisdiction, resulting in a far more severe punishment being levied upon the defendant. 762 F.2d 569, 577 (7th Cir. 1985). We observed that "the distinction between federal and state jurisdiction is among the most basic to our legal system, and even a reasonably competent first year law student must be aware of it," but did not find that counsel's failure rose to the level of ineffective assistance of counsel. Id. Accordingly, the defendant was not permitted to withdraw his guilty plea. Id. We believe Barnes and Teller are controlling.
>
> We recognize that some predictions are such gross mischaracterizations that they provide a "strong indication of [constitutionally] deficient performance." Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986); Strader v. Garrison, 611 F.2d 61, 63-64 (4th Cir. 1979) (defendant permitted to withdraw guilty plea because there was substantial evidence showing he was "grossly misled" about sentence, and defendant clearly relied on attorney's statements). However, we believe this case does not approach that line. See Barnes, 83 F.3d at 940. To rise to a constitutional violation, there must be greater evidence than there is here of the attorney's lack of a good-faith effort to discover and analyze relevant facts and discuss them with the client. Id.

Id. at 1053.

I reach the same result here. Even if counsel incorrectly told petitioner he would serve his sentence at a camp, such an error does not even approach those discussed in Martinez and Barnes. The alleged error in this case had no impact on the length of petitioner's sentence, just the facility at which it would be served, and a prison inmate has no legitimate expectation of serving his sentence at any particular facility. See, e.g., Olim v. Wakinekona,

7

461 U.S. 238, 245-56 (1983). Nor does the record contain any evidence that counsel failed to undertake a good faith investigation of the issue.[3]

Moreover, the transcript of the plea colloquy undermines any claim that petitioner entered his plea based on an assurance that he would serve his sentence at a camp. Judge Clevert asked petitioner if anyone had made him any promises about his sentence, and petitioner responded: "No, sir." (Plea Hr'g Tr. at 13.)[4] The court may presume the veracity of such statements made freely and under oath during a plea hearing. See, e.g., United States v. Peterson, 414 F.3d 825, 827 (7th Cir. 2005); United States v. Stewart, 198 F.3d 984, 986-87 (7th Cir. 1999); United States v. Standiford, 148 F.3d 864, 868 (7th Cir. 1998).

Finally, petitioner presents no "objective evidence" that, had be been told he would not serve his sentence at a camp, he would not have pleaded guilty and insisted on going to trial. See, e.g., Koons v. United States, 639 F.3d 348, 351 (7th Cir.), cert. denied, 132 S. Ct. 362 (2011); Hutchings, 618 F.3d at 697. In his reply submission, petitioner claims that had counsel discussed with him the impact of the "death resulting" provision on his security status he would not have pleaded guilty. (R. 15 at 2 ¶ 13.) However, a "mere allegation" by the defendant that he would have gone to trial is insufficient to establish prejudice. United States v. Cieslowski, 410 F.3d 353, 359 (7th Cir. 2005); United States v. Fudge, 325 F.3d 910, 924 (7th Cir. 2003). And, given his exposure – a guideline range of 210-262 months with a 20 year mandatory minimum – petitioner had every incentive to plead guilty and cooperate with the government

---

[3]I have found no authority for the proposition that a defendant, in order to enter a knowing and voluntary plea, must be properly advised where he might end up serving his sentence.

[4]The plea agreement contains no assurances about prison placement.

8

to improve his situation; the notion that, had petitioner known he would serve his sentence at a low security facility rather than a camp, he would have spurned the plea agreement, which contained an agreement for a non-guideline, below minimum sentence (Plea Agreement at 6 ¶ 20), is too implausible to warrant § 2255 relief.[5]

## IV.  CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED**, and this case is **DISMISSED**.  The Clerk is directed to enter judgment accordingly.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner.  In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard for making a "substantial showing" is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For the reasons stated above, petitioner cannot make such a showing, so I decline to

---

[5]In his reply, petitioner alleges that counsel did not discuss with him the causing death enhancement under the guidelines.  This assertion is refuted by the record. (Plea Hr'g Tr. at 9, 12, 28, 31.)  The plea agreement also clearly states that the government would recommend an offense level of 38 because death or serious bodily injury resulted from the offense. (Plea Agreement at 5 ¶ 16; see also Plea Hr'g Tr. at 17.)  On the agreement's signature page, petitioner acknowledged that his lawyer had reviewed every part of the agreement with him and advised him of the implications of the sentencing guidelines.  (Plea Agreement at 13.)  Petitioner affirmed as much during the plea hearing.  (Plea Hr'g Tr. at 10.)  In his reply, petitioner also states that his lawyer told him he would get about seven years. (R. 15 at 2 ¶ 13.)  As indicated above, petitioner told Judge Clevert that no one had promised him a particular sentence.  (Plea Hr'g Tr. at 13.)  In any event, even if counsel made such a prediction, the ultimate sentence of 115 months is not so far off as to support a finding of ineffective assistance.  See Martinez, 169 F.3d at 1053.

9

issue a COA.

Dated at Milwaukee, Wisconsin, this 21st day of February, 2012.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge